**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**


**DARLENE BREWER**                                                                                 **PLAINTIFF**


**VERSUS**                                                     **CIVIL ACTION NO. 1:04CV247-P-D**


**AMSOUTH BANK and HOOT WILDER,**
**in his individual capacity**                                                              **DEFENDANTS**


## MEMORANDUM OPINION

This cause is before the Court on the defendants' Motion for Summary Judgment [33-1]. The Court, having reviewed the motion and being otherwise fully advised in the premises, finds as follows, to-wit:

FACTUAL BACKGROUND

Darlene Brewer worked for AmSouth Bank as a branch manager at the Highway 45 North Branch in Columbus, Mississippi. Hoot Wilder, Columbus City President, and Charles Douglas, Group Sales Manager for the Columbus area, were her supervisors. Susan Cain served in the capacity of Area Human Resources Manager for Mississippi and Louisiana.

Shortly after Wilder began working for AmSouth in October 2001, Wilder began subjecting Brewer to questions and comments that she found offensive. For example, Wilder insinuated that Brewer obtained new business by wearing short skirts and low-cut blouses when calling on customers and by engaging in illicit behavior after hours. Wilder also commented on Brewer's enjoyment of motorcycling and observed on one occasion that she probably looked hot in leather.

In May 2002, AmSouth collections agent Harold Perkins informed Susan Cain that three of

Brewer's loan accounts with AmSouth were in a delinquent status. He asked for Cain's assistance in communicating with Brewer because he had been unsuccessful in contacting Brewer himself. Cain, in turn, asked Wilder to discuss the debts with Brewer and the importance of responding to Perkins' telephone calls.[1] Wilder met with Brewer as requested by Cain. In response to Wilder's inquiries, Brewer explained why the loans were delinquent; in the process, Brewer discussed personal issues relating to her pending divorce. Brewer explained that she was no longer paying her AmSouth mortgage because she had been forced to move into a new dwelling due to her husband's continued harassment and she could not afford to pay for two homes. Approximately a week later Wilder asked Brewer whether she had returned Perkins' calls.

Brewer took offense to Wilder's questions. She sent Wilder an e-mail on June 12, 2002 complaining of "the personal questions you keep asking me. Questions concerning my divorce, where i [sic] am living, etc." Brewer wrote:

> These type questions don't have anything to do with my job at Amsouth and I would rather you not ask them anymore. If there is something you need to ask, please have cindy ask me. Although, this last year with my divorce, my first grandchild born and in intensive care, and my son in Afghanistan; has been just about the worse year of my life.

Brewer continued:

> I have no problem with any type of business conversations at all–the personal questions make me uncomfortable and frustrated. And you always seem to start off with the personal questions, so I get frustrated right away.
>
> i did call the number you gave me and have talked to several people and informed them of my situation and what i am trying to do. Harold will be back Tuesday and I left a message and I will call him back Tuesday.

---

[1] AmSouth maintains a "Personal Finances and Indebtedness" policy which provides that irresponsible financial practices by bank employees will not be tolerated. The policy also informs employees that the Bank complies with all bankruptcy laws.

Thanks and hope you understand.

Brewer sent Cindy Rivers a copy of the communication.[2]

Wilder responded to Brewer by e-mail the following day.  He apologized to Brewer for "any misunderstanding relative to my inquiries regarding your personal life."  He explained:

> In every case, I am responding to an issue that does impact your work.  Most recently, my inquiries came as a result of a call from Susan Cain regarding the past due status of your loans with AmSouth and the fact that failure to address that issue could impact your employment status.  Since the status of the loan and repayment capacity is so tied to the difficulties regarding your divorce and the resolution of the housing issue, it's most difficult to address the issue without discussing aspects of your personal life.  I assure you that my questioning is only an effort by me to understand so that I can properly advise you and respond to questions from Susan.

Brewer later filed bankruptcy; nothing in the record indicates that Wilder or any other AmSouth employee was aware of Brewer's bankruptcy before she filed the instant litigation.

In December 2002 Wilder completed Brewer's employee evaluation.  He rated her performance overall as "meets expectations."  Wilder did note that some personal issues and illnesses in 2002 contributed to a high rate of absenteeism and lack of consistency in the first three quarters of 2002, as evidenced by the fact that Brewer's branch did not achieve its sales goals even once during that time.  Brewer refused to sign the evaluation; instead, she prepared a two page typewritten response.  Her response mentioned the June 2002 communications between Wilder and herself.  She noted:

> The only "personal" problem I had last year was when Hoot continually asked me personal questions and I finally sent him and email and copied Cindy Rivers, our

---

[2]  Though Rivers often handled routine human resources matters, she was not a member of AmSouth's human resources department.  Rivers never responded to Brewer's June 2002 e-mail, nor did she forward it to Susan Cain.  Brewer testified that Rivers responded to Brewer's other oral complaints about Wilder by advising her not to start trouble because Mississippi is an at-will state.

local HR person, and asked him not to ask me any more personal questions–strictly business. Hoot sent me an email back apologizing and stated he would not ask any more personal questions.

Brewer's complaints about Wilder led to hostility from Wilder. The hostility escalated after Brewer submitted her written response to the performance evaluation. After Wilder's complaint, Wilder would not visit or help the Highway 45 North branch. Wilder commented to another bank employee that Brewer did not need to be a branch manager. In addition, numerous other AmSouth employees noticed Wilder's attitude toward Brewer and commented to her about it.

On May 6, 2003, Brewer received a written warning for the Highway 45 North branch's poor performance, again evidenced by the branch's failure to meet scorecard goals for the first quarter of 2003. The memo emphasized the need for Brewer to provide continued constructive coaching and leadership as contrasted with Brewer's poor attendance record[3] and its alleged impact on her branch's production. Brewer acknowledged the warning by affixing her signature to a copy on May 9, 2003.

On June 4, 2003, Brewer took leave under the Family and Medical Leave Act ("FMLA") in order to undergo knee surgery.[4] Brewer initially anticipated returning to work on June 25, 2003. However, Brewer's recovery took longer than expected and she provided AmSouth with several doctor's notes extending her leave. When Brewer's FMLA leave expired on August 27, 2003, her treating physician had not released her to return to work. AmSouth extended Brewer's leave through

_____

[3] The warning indicated Brewer had missed 16.5 days of work between January 1, 2003 and April 25, 2003, an average of one day per week.

[4] Brewer suffered an injury to her knee in December 2002. Beginning in February 2003, she attended physical therapy sessions for one to two hours, two to three days per week. AmSouth permitted Brewer to attend the therapy sessions without docking her pay since she worked through lunch and stayed late to make up her time.

September 5, 2003 as an accommodation to her because she had a return visit to her physician scheduled for September 4, 2003.

Brewer contacted Cindy Rivers, Hoot Wilder's assistant, on September 4, 2003. After informing Rivers that she had undergone a minor procedure to her knee, Brewer told Rivers she would be returning to work on September 8, 2003. Rivers explained to Brewer that she would have to provide a doctor's return to work release.[5] Brewer agreed to fax the release the following day, but she failed to do so.[6]

Brewer returned to her doctor on September 11, 2003. She obtained a return to work form at that time, but the form indicated a return to work date of September 22, 2003 with the following restrictions: no climbing stairs, no stooping, bending or squatting, and must be seated at work as much as possible. The note provided for a return visit on October 20, 2003 at which time her physician would consider lifting the above-noted restrictions.[7]

An essential function of the branch manager position is outside sales. AmSouth expected its branch managers to devote at least thirty percent of their time to outside sales calls. The restrictions set forth in Brewer's September 11, 2003 doctor's statement arguably constrained

---

[5] Brewer was informed of the need for a return to work certification as early as July 7, 2003, via a copy of Heather Montgomery's memo to Hoot Wilder regarding Brewer's FMLA leave.

[6] The record contains no return to work certification dated September 4, 2003. The record does contain, however, a copy of the doctor's notes from that date. Nothing in the record supports plaintiff's assertion that she provided the treatment notes to AmSouth on September 4 or 5 as Brewer alleges. Jan Dyer's declaration indicates that she encountered Brewer on a regular work day and that she was on vacation on those particular days. AmSouth's attendance records confirm Dyer's testimony.

[7] Brewer's doctor did, in fact, release her to return to full duty on October 20, 2003.

Brewer's ability to perform outside sales calls for an unforeseeable time period. Because Hoot Wilder and Charles Douglas felt that Brewer could not fulfill an essential function of the branch manager position and because the branch had been without a manager for in excess of fourteen weeks, they decided to terminate her employment and fill the branch manager position.[8]

Wilder and Rivers told Brewer of her termination on September 12, 2003. They informed Brewer that she was welcome to apply for employment with AmSouth when she was able to return to work. Finally, they told Brewer to contact Susan Cain, the area human resources manager, with any questions she might have.

Brewer initiated informal contact with AmSouth on several occasions after October 20, 2003 in an effort to return to work at the bank. When her efforts proved fruitless, Brewer sent an e-mail to Todd Dalton, an AmSouth recruiter, inquiring about openings at her former branch. Dalton referred Brewer's communication to Cain; she responded by letter on December 5, 2003 wherein she outlined the procedure for seeking an available position. Brewer never formally applied for a position with AmSouth after receiving Cain's letter.

Instead, Brewer filed a charge with the EEOC on January 16, 2004. Her charge alleged discrimination on the basis of sex, disability and retaliation. The EEOC issued Brewer a Notice of Right to Sue on May 19, 2004. She filed the instant suit on August 16, 2004. Brewer alleged a right of recovery against AmSouth under the FMLA, Title VII and the Bankruptcy Code. In addition, she raised a state law claim for malicious interference with employment relations against Hoot Wilder individually. The defendants answered, denying all liability. After adequate opportunity for discovery, the defendants moved for summary judgment. The matter has been fully briefed and the

---

[8] Wilder and Douglas conferred with Susan Cain; she concurred in the decision.

Court is ready to rule

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S. Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. <u>John v. State of La. (Bd. Of T. for State C. & U.</u>, 757 F.2d 698, 712 (5th Cir. 1985).

A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 91 L.Ed.2d 202, 106 S. Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. <u>Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis</u>, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." <u>Id.</u> "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. <u>Phillips Oil Company, v. OKC Corporation</u>, 812 F.2d 265, 272 95th Cir. 1987). Where "the summary judgment evidence establishes

that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. See Celotex, 477 U.S. at 323, 106 S. Ct. at 2552. Topalian v. Ehrman, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. Union Planters Nat. Leasing v. Woods, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. Topalian, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." John, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment, " even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. Id. at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. Ferguson v. National Broadcasting Co., Inc., 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." In Re Municipal Bond Reporting Antitrust Lit., 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material

facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed. R. Civ. P. See also Union Planters Nat. Leasing v. Woods, 687 F.2d at 119.

While generally "[t]he burden to discover a genuine issue of fact is not on [the] court, (Topalian, 954 F.2d at 1137), "Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention–the court must consider both before granting a summary judgment." John, 757 F.2d at 712, quoting Keiser v. Coliseum Properties, Inc., 614 F.2d 406, 410 (5th Cir. 1980).

## LEGAL ANALYSIS

I.      FMLA

A.      Interference with FMLA Rights

Brewer asserts a right of recovery under the Family and Medical Leave Act. The Act permits eligible employees working for covered employers to take up to twelve weeks of job protected leave for various medical reasons with a guarantee of reinstatement to an equivalent position with equivalent benefits, pay and other terms and conditions of employment. Balcabos v. Nat's W. Life Ins. Co., 162 F.3d 379, 383 (5th Cir. 1998); 29 U.S.C. § 615(a).

AmSouth's position is simple. AmSouth complied with the FMLA's substantive requirements by granting Brewer twelve weeks of FMLA leave from June 4, 2003 through August 27, 2003. AmSouth even went beyond the requirements of the Act by extending Brewer's leave to September 5, 2003. Brewer failed to provide the necessary return to work certification in a timely fashion. When she did provide the requested form on September 11, 2003, the certificate indicated

a return to work date of September 22, 2003 and listed several limitations which arguably impacted

Brewer's ability to engage in outside sales. Accordingly, AmSouth was within its rights in deciding

to terminate Brewer's employment effective September 12, 2003. Hunt v. Rapides Healthcare

System, LLC, 277 F.3d 757, 764 (5th Cir. 2001). See also McGregor v. Autozone, Inc., 180 F.3d

1305, 1308 (11th Cir. 1999). Brewer was not entitled to reinstatement under the FMLA.

B.      Retaliation Under FMLA

In the alternative, Brewer asserts she was discharged in retaliation for exercising her rights

under the FMLA. In order to make out a prima facie case of FMLA retaliation, plaintiff must

demonstrate 1) that she is protected under the FMLA; 2) that she suffered an adverse employment

decision; and 3) the employer treated the plaintiff less favorably than another employee who had not

requested leave under the FMLA or the employer based the adverse employment decision on the

plaintiff's request for FMLA leave. Balcabos, 162 F.3d 379, 383 (5th Cir. 1998).

Brewer's retaliation claim is likewise without merit. When an employee's discharge occurs

after exceeding the twelve weeks of protected leave under the FMLA, she cannot establish a prima

facie case of retaliation. Oatman v. Fuji Photo Film USA, Inc., 2002 WL 31718396 (5th Cir. 2002).

It is undisputed that Brewer's FMLA leave expired on August 27, 2003, and that she still had not

been released to return to work at that time. It is also undisputed that AmSouth did not terminate

Brewer's employment until September 12, 2003–well after Brewer's entitlement to FMLA protection

ended. Thus, plaintiff was not protected under the FMLA at the time of her termination. AmSouth

is entitled to judgment as a matter of law on Brewer's FMLA retaliation claim.

II.     Title VII Claims

Brewer's Complaint alleges several theories of relief under Title VII. The Court will address

each of these in turn.

A.    Gender Discrimination

1.    Discharge

Title 42, section 2000e-2 forbids an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).  A plaintiff seeking to recover under Title VII for discriminatory discharge must first demonstrate a prima facie case under McDonnell-Douglas Corporation. v. Green. 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).  The elements of a prima facie case are:

1.    Membership in a protected class;

2.    The claimant is qualified for the position;

3.    The claimant was discharged;

4.    The position was remained open or was filled by a member not of the protected class.

McDonnell Douglas, 411 U.S. at 802.  Alternatively, a plaintiff may establish a prima facie case by demonstrating the first three elements enumerated above and that similarly situated persons outside the protected class received more favorable treatment.  Waggoner v. City of Garland, 987 F.2d 1160, 11603 (5th Cir. 1993).

Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the employment decision.  Id. at 802-03.  If the employer does so, the burden then shifts back to the plaintiff to produce evidence tending to establish that the reason advanced in support of the decision is a mere pretext for discrimination.  Id. at 804, 807.  A plaintiff may do so by producing evidence of discriminatory

motive or by showing the employer's "basis" for the refusal to hire unworthy of belief and that, instead, the true reason was unlawful discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 516-519 (1993). The plaintiff at all times retains the ultimate burden of persuading the fact finder that the employment decision was the result of intentional discrimination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, (1981).

AmSouth avers that Brewer is incapable of making out a prima facie case under either of the above models. As to the first, Brewer cannot show that AmSouth replaced her with a male employee. The record clearly establishes that AmSouth chose Ann Knight, a female, to fill Brewer's position. Plaintiff made no effort to refute defendant's showing in her response to the motion for summary judgment.

Instead, Brewer focused her attention on the alternative method of proving her case. She contends that a male employee, Walter Thatcher, had been off work for a very long time, but was able to return to work. He was on restrictive duty." She avers that this difference in treatment is sufficient to make out a prima facie case. However, Brewer ignores the requirement that she and Thatcher be similarly situated. In order to sustain this burden, plaintiff must offer proof that AmSouth "gave preferential treatment to [another] employee under nearly identical circumstances. Okoye v. Univ. of Tex. Houston Health Science Ctr., 245 F.3d 507, 514 (5th Cir. 2001). There is a critical distinction between Thatcher and Brewer–Thatcher returned to work without restrictions when his FMLA leave expired and Brewer did not.

Thatcher began his FMLA leave on May 15, 2003, and returned to work with restrictions on July 7, 2003. He returned to fully duty on August 18, 2003, within the twelve weeks provided by the FMLA. Thatcher was able to resume his normal duties without restriction prior to the expiration

of his FMLA leave.  Under the FMLA, Thatcher was entitled to twelve weeks of job protected leave.

In fact, he could have remained home during the entire twelve weeks.  Instead, he chose to return to

work less than eight weeks into his leave and to perform the functions that he could.  Thatcher's

doctor lifted  his restrictions and he was able to return to full duty work before his leave expired.

Brewer, on the other hand, did not return to work (with or without restrictions) before her leave

expired.  Based on these distinctions, the Court concludes no reasonable juror could find that the

defendant treated Brewer and Thatcher differently under nearly identical circumstances.

Accordingly, the Court concludes that Brewer failed to adduce sufficient evidence to create a

genuine issue of material fact as to all of the elements of her prima facie case.  AmSouth is entitled

to summary judgment on plaintiff's discriminatory discharge claim.

> 2.    Failure to Hire

Brewer's Complaint also alleged that AmSouth's failure to hire her for the assistant manager

opening following Ann Knight's promotion to branch manager constituted sex discrimination.[9]

AmSouth urges the Court to grant summary judgment on this claim as well based on Brewer's failure

to exhaust administrative remedies with regard to the instant claim.

One of the primary purposes of an EEOC charge is to put an employer on notice of the

existence and nature of the charges against it.  Manning v. Chevron Chem. Co., 332 F.3d 874, 879-

80 (5th Cir. 2003).  A Title VII suit is limited to "the scope of the EEOC investigation which could

reasonably grow out of the administrative charge."  Fine v. GAR Chem. Corp., 995 F.2d 576, 578

(5th Cir. 1993).  A court action cannot encompass facts or issues not relating to the subject matter of

the EEOC charge.  Id.

---

[9]  AmSouth hired a male, Justin Casano, to fill the assistant branch manager position.

Brewer's EEOC complaint never alluded to a failure to hire claim. She never mentioned the assistant manager position, that she desired the position, or that a male had been hired for that position. Instead, her charge focused on alleged sexual harassment by Wilder and retaliation stemming from that harassment. The only mention of sex discrimination is Brewer's contention regarding Walter Thatcher, addressed supra. An investigation of Brewer's failure to hire claim could not have reasonably been expected to grow out of her disparate treatment allegations concerning Thatcher. Because Brewer did not include allegations pertaining to the assistant manager position in her EEOC charge, this Court has no jurisdiction over that claim. AmSouth is entitled to judgment as a matter of law on Brewer's failure to hire claim.

B.      Sexual Harassment

Brewer's Complaint also raises a claim stemming from Wilder's alleged sexual harassment. The defendant moved for summary judgment on this claim as well. Brewer's response to the motion conceded this claim; therefore, it is unnecessary for the Court to address this issue.

C.      Retaliation

Title VII makes it unlawful for an employer "to discriminate against any of [its] employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. Brewer does not, and cannot, allege a violation of Title VII's "participation" clause because it is undisputed that she was not involved with an EEOC charge or lawsuit prior to her discharge. Therefore, plaintiff's

14

retaliation claim necessarily depends on the statute's "opposition" clause.[10]

Analysis of a retaliation claim proceeds under the same <u>McDonnell Douglas-Burdine</u> shifting burden framework as other claims arising under Title VII. A plaintiff seeking recovery for an employer's alleged retaliatory acts must first establish a prima facie case of retaliation. Brewer must thus adduce evidence of the following elements in order to meet her prima facie burden:

1.  Involvement in activities statutorily protected by Title VII;

2.  Adverse employment action; and

3.  A causal connection between the protected act and the adverse employment action.

<u>Larry v. North Mississippi Medical Center</u>, 940 F. Supp. 960, 964 (N.D. Miss. 1996), <u>aff'd in part</u>, 156 F.3d 181 (5th Cir. 1998). Once a plaintiff establishes a prima facie case, a presumption of unlawful retaliation arises. At that point, the burden then shifts to the defendant to articulate a legitimate reason for the action taken. <u>Sherrod v. American Airline, Inc.</u>, 132 F.3d 1555, 1564 (11th Cir. 1997). Should the defendant produce evidence of a legitimate, non-retaliatory reason for the adverse employment action, then the inference created by the prima facie case dissolves and the burden returns to the plaintiff to establish that the reason proffered by the defendant in support of its action is nothing more than a pretext to hide its true retaliatory motivation. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993).

Plaintiff alleges she was terminated because she complained about Wilder's alleged sexually-based treatment of her as described in the Court's earlier recitation of facts. Brewer contends she complained of Wilder's behavior in the June 2002 e-mail she sent to Wilder and Rivers, in her

---

[10] Courts generally grant less protection of such claims. <u>See Aldridge v. Tougaloo College</u>, 847 F. Supp. 480, 480 (S.D. Miss. 1994).

written response to her December 2002 performance evaluation and through conversations with Cindy Rivers and Charlie Douglas.

Defendant seeks summary judgment on plaintiff's retaliation claim based on Brewer's inability to establish a prima facie case. Notwithstanding plaintiff's arguments to the contrary, the Court is in agreement with the defendant's analysis.

Brewer cannot show she engaged in activity protected by Title VII. Brewer never lodged a sexual harassment complaint. Brewer's written complaints merely referred to "personal questions" by Wilder. Taken in context, Brewer's complaints cannot reasonably be construed as referencing sexual harassment.

Even assuming Brewer's complaints could be regarded as a complaint of sexual harassment, she must also prove that she "had a reasonable belief that the employer was engaged in unlawful employment practices." Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1140 (5th Cir. 1981). In order to do so, plaintiff must demonstrate that her belief was objectively reasonable. Clark County School Dist. v. Breeden, 532 U.S. 268 (2001). A hostile environment claim, like the one advanced in Brewer's complaint, requires proof of sexually-based conduct that is severe and pervasive enough to alter the terms and conditions of the work environment. Mattern v. Eastman Kodak Co., 104 F.3d 702 (5th Cir. 1997). Review of the factual allegations cited by Brewer in support of her sexual harassment claim leads to an inescapable conclusion–no reasonable person would believe that Wilder's isolated comments to Brewer were severe or pervasive enough to alter the terms and conditions of her employment.

Finally, Brewer cannot establish the third element of her prima facie case–she failed to adduce any evidence of a causal connection between her "report" of harassment and her discharge.

"A 'causal link' is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." Medina v. Ramsey Steel Co., 238 F.3d 674, 684 (5th Cir. 2001). Because Brewer did not make a sexual harassment complaint, neither Wilder, Douglas nor Cain had any knowledge of "protected activity." In fact, Wilder testified unequivocally that he believed Brewer's reference to "personal questions" referred only to his conversations with Brewer about her delinquent loans. Accordingly, no reasonable trier of fact could conclude that the decision to terminate Brewer's employment was based on Brewer's opposition of unlawful sexual harassment.[11]

III.     Bankruptcy Discrimination

Brewer also brought a claim for discrimination based on bankruptcy. AmSouth moved for summary judgment on the bankruptcy claim. Brewer conceded this claim as well; accordingly, the Court declines to address the issue further.

IV.     State Law Claim

Brewer seeks recovery against Hoot Wilder, her direct supervisor, for malicious interference with employment relations. Brewer alleges Wilder tortiously interfered with her employment by urging her termination because of her opposition to his offensive and personal comments of a sexual nature. In order to recover, plaintiff must prove:

    1.     That the acts were intentional and willful;

---

[11] Plaintiff's inability to establish the casual relationship element of her prima facie case is also dispositive of the ultimate issue in a retaliation case, e.g., whether the adverse employment action would not have occurred 'but-for' the protected activity. "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." Chaney v. New Orleans Pub. Facility Mgmt., Inc., 179 F.3d 164, 168 (5th Cir. 1999).

2.      That they were calculated to cause damage to plaintiff in her lawful business;

3.      That they were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant; and

4.      That actual damage and loss resulted.

McClinton v. Delta Price Catfish, Inc., 792 So.2d 968 (Miss. 2001); Morrison v. Mississippi Enterprise for Technology, Inc., 798 So.2d 567, rehearing denied and certiorari denied, (Miss. App. 2001). In addition to the foregoing elements, a successful claimant must also prove "that the contract would have been performed but for the alleged interference." Levens v. Campbell, 733 So.2d 753, 761 (Miss. 1999).

Wilder's summary judgment motion advances several arguments in favor of summary judgment. First and foremost, he points to a lack of evidence tending to establish that he fulfilled his supervisory duties in a manner "calculated to cause damage" to Brewer. Wilder's sole interest at all times was the advancement of AmSouth's legitimate goals and expectations.

In a related vein, Wilder urges plaintiff's inability to prove yet another element of her cause of action–that he acted without right or justifiable cause. As recognized by the Mississippi Supreme Court, "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." Id. at 760. A manager who disciplines or terminates employees cannot be held individually liable for those actions so long as the conduct complained of falls within the scope of his employment responsibilities. Raiola v. Chevron, 872 So.2d 79, 86 (Miss. Ct. App. 2004). Wilder was Brewer's supervisor; as such, he was acting within the scope of his duties when he, in conjunction with Douglas and Cain, decided to terminate plaintiff's employment because she could

not return to work within a reasonable time after her FMLA leave expired.  In view of that fact and plaintiff's failure to offer any evidence from which a reasonable trier of fact could conclude that Wilder acted in bad faith, plaintiff's claim must fail.[12]

CONCLUSION

Based on the foregoing facts and analysis, the Court finds that the defendants' Motion for Summary Judgment [33-1] is well-taken and should be granted.  A judgment will issue accordingly.

This the 25th day of May, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE

---

[12]  Indeed, the record is replete with instances in which Wilder accommodated plaintiff subsequent to her written complaints.  Wilder permitted Brewer to make up missed work time due to her physical therapy appointments.  He agreed to extend Brewer's FMLA leave beyond the twelve weeks required under the Act.  These actions belie the existence of bad faith on Wilder's part.